Frank W. Compagni (A 7174)
*compagni@utahpatents.com*
Bretton L. Crockett (A 8573)
*crockett@utahpatents.com*
MORRISS O'BRYANT COMPAGNI, P.C.
734 East 200 South
Salt Lake City, Utah, 84102
Telephone:  (801) 478-0071/Facsimile: (801) 478-0076

Attorneys for Plaintiff, Bai-Win Mercantile Corp., Ltd.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BAI-WIN MERCANTILE CORP., LTD. (a Hong Kong Limited Liability Company,<br><br>     Plaintiffs<br><br>     vs.<br><br>QUICKUTZ, INC. (a Utah Corporation),<br><br>     Defendant | **COMPLAINT**<br><br>Civil No.: 2:09-cv-628<br><br>Judge:   Clark Waddoups |

Plaintiff, Bai-Win Mercantile Corp., LTD. ("Bai-Win") by and through its attorneys, hereby complains of Defendant Quickutz, Inc. ("Quickutz") and for causes of action alleges as follows:

## STATUS OF PARTIES

1.	Bai-Win is a corporation organized and existing under the laws of Hong Kong, having a corporate office located at Room 1202, Golden Star Building, 20 Lockhart Road Hong Kong and a central operation office at 1F., No. 2. Lane 405, Sec. 6, Chung Shan N. Road, Taipei, P.R.C. Taiwan.

2.	Quickutz is a corporation organized and existing under the laws of the state of Utah, and has a principle place of business at 1356 West 1250 South, Suite 100, Orem, Utah 84058.

## JURISDICTION AND VENUE

3.	This is an action for breach of contract under Article 2 of the Uniform Commercial Code, for fraud in the inducement and detrimental reliance.

4.	This Court has subject matter jurisdiction over the 28 U.S.C. § 1332 based on diversity of citizenship, because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of a State and a citizen of a foreign state.

5.	This Court has personal jurisdiction over the Defendant because Defendant is a resident corporation of the State of Utah and conducts business within this judicial district. Venue is proper in this Court under 28 U.S.C. § 1391(a) and (c), because the Defendant resides within this judicial district and is subject to personal jurisdiction in this judicial district.

6.	Defendant has committed the acts alleged herein within this Judicial District, and because Defendant is subject to personal jurisdiction in this state and, therefore, resides within this judicial district for purposes of venue.

## GENERAL ALLEGATIONS

7. Bai-Win is a trading company with offices in Hong Kong, Dongguan City, China and Taipei, Taiwan. Bai-Win contracts with companies seeking to have goods manufactured in Hong Kong, Taiwan, and China. Bai-Win works with various factories in Hong Kong, Taiwan and China to have the goods manufactured and facilitates delivery of the goods to its clients.

8. Bai-Win works as an intermediary between the various factories and its clients. Bai-Win sources the factories that can produce the product requested by its client under the quality guidelines and acceptable cost range dictated by the client.

9. Bai-Win provides pre-production samples to the client for final approval and from time to time, coordinates onsite factory inspections of finish product for quality control purposes prior to shipment.

10. Bai-Win works in conjunction with the factories and the client's shipping company to insure proper transfer of all finish goods, including all necessary paperwork and documentation required at both the Provincial and National level, from factory to port of exit.

11. Bai-Win insures and provides guaranty to the factories for the payment of all goods produced by the factories on behalf of Bai-Win's client.

12. In situations where a client fails to pay Bai-Win for goods received, Bai-Win is held responsible for all outstanding amounts owed to the factories.

13. Bai-Win can also incur interest based penalties and fees on any outstanding or past-due amounts by the factories.

14. In the event that Bai-Win is unable to pay the factories any amount due, the factories can cease all manufacturing activities for Bai-Win or its clients, hold any/all product produced for Bai-Win or its clients not yet shipped and hold Bai-Win accountable for any/all

unused raw materials or other costs incurred on behalf of Bai-Win or its clients.

15.     Quickutz is a company located in Orem, Utah that primarily sells goods in the craft industry including die cutting systems and accessories therefor.

16.     On or about May 30, 2006, Quickutz placed its first order with Bai-Win, for chemically etched dies in an amount of $273,420.

17.     The payment terms for this order was 30% at the time of order, 40% at the time of shipment and 30% within sixty days thereafter.

18.     On multiple occasions thereafter, Quickutz contracted with Bai-Win to have products manufactured in China for delivery to its Orem location. The goods included, but where not limited to, die cutting tools, dies and paper/vinyl products used in conjunction with Quickcut's die cutting systems that are sold to Quickutz's customers.

19.     On or about January 5, 2007, Quickutz requests that the payment terms for new orders be changed to 10% at the time of the order, 50% at shipment and 40% at within 60 days after shipment.

20.     Subsequently, Quickutz began to fail to make good on the required payment terms. In April 2008, because of the growing outstanding balance that Quickutz owed to Bai-Win, Bai-Win requested that the payment terms be changed to 20% at the time of order, 40% at shipment and 40% within sixty days thereafter.

21.     Quickutz accepted the April 2008 payment terms for all future orders and continued to place orders with Bai-Win under such payment terms.

22.     On or about April 25, 2008, Quickutz sent a purchase order to Bai-Win that included a request for the manufacture and delivery of $205,995.00 in goods. The purchase

order included the new payment terms of 20% down, 40% at shipment and 40% at 60 days.

23. Between April 2008, and May 6, 2009, Quickutz sent over fifty additional purchase orders totaling more than $2 million dollars. These additional purchase orders for goods included payment terms of 20% down, 40% at shipment and 40% at 60 days.

24. In all but two instances, Quickutz accepted the goods received pursuant to each order and, upon information and belief, subsequently sold the goods to its customers.

25. For each purchase order, while making the initial required down payments, Quickutz failed to make timely payments pursuant to the payment terms set forth in each of its own purchase orders.

26. Unbeknownst to Bai-Win at the time, on information and belief, beginning in 2008, Quickutz began to circumvent Bai-Win by using non-Bai-Win factories to produce goods that were also being produced by Bai-Win.

27. On information and belief, Quickutz began using the non-Bai-Win factories to avoid having to paying Bai-Win for goods shipped by Bai-Win and accepted by Quickutz.

28. In addition, on information and belief, Quickutz was paying for goods received from the non-Bai-Win factories while failing to pay Bai-Win for goods already received.

29. On information and belief, while Quickutz made express representations to Bai-Win that it did not have money to pay its outstanding balance, it was deriving revenue from the sale of goods it received from both Bai-Win factories and the non-Bai-Win factories.

30. Pursuant to the purchase orders, Bai-Win contacted various factories in China to manufacture the goods as set forth in each purchase order and subsequently delivered the manufactured goods to Quickutz.

31. Because of Quickutz failure to timely pay Bai Win, the factories notified Bai Win of their intent to withhold one or more shipments of goods manufactured for Quickutz until Quickutz agreed to make sufficient payment toward its outstanding balance with Bai-Win.

32. Because of Quickutz failure to timely pay Bai Win, Bai-Win has been unable to fully pay its contracting factories. As a result, Bai-Win's relationship with these factories has been compromised, which has made it difficult for Bai-Win to get other goods manufactured through these factories for its other clients.

33. Because of Quickutz failure to timely pay Bai Win, Bai-Win has been unable to fully pay its employees. As a result, Bai-Win may be subject to liability with its employees for its inability to pay its employees.

34. Because of Quickutz failure to timely pay Bai Win, Bai-Win has been unable to fully pay its shareholders. As a result, Bai-Win may be subject to liability with its shareholders for its inability to pay dividents.

35. Because of Quickutz failure to timely pay Bai Win, Bai-Win has been unable to bring new products to market. As a result, Bai-Win's has lost millions of dollars in sales of such new products that would otherwise already be on the market.

36. On January 23, 2009, Erik Adams, president of Quickutz, admitted in an email to Bai-Win that Quickutz owed Bai Win $661,423.47, most of which was past due.

37. The amount admitted to be owed as of January 23, 2009, did not include the orders which had been produced but not shipped for lack of payment, which Quickutz later requested to be cancelled, and orders from Quickutz that that were still pending where the factories had already purchased raw materials to fill the orders.

38. On several occasions, Quickutz expressly agreed to make certain payments in order to persuade Bai-Win to continue to facilitate the shipment of goods to Quickutz. In virtually every instance, upon receipt of the additional goods released by Bai-Win and/or its factory based on Quickutz representations that it would make certain payments to Bai-Win, Quickutz failed to make the agreed upon payment(s).

39. The time between such misrepresentations to make payment and the dates when a payment was missed or shorted was often a matter of a few days. As such, when Quickutz made representations that it would make certain payments on specific dates to Bai-Win, Quickutz knew or should have known that it would not comply with the agreed upon payment schedule.

40. Moreover, Quickutz induced Bai-Win to release additional goods by threatening cancelation of orders and indeed cancelled orders that were already manufactured but were being withheld from delivery for non-payment of previously shipped and accepted goods by Quickutz.

41. Quickutz is responsible for payment of goods that were already produced pursuant to its purchase orders, but cancelled due to its failure to pay Bai-Win and resulting withholding by Bai-Win of such goods.

42. On April 1, 2009, Quickutz sent a document entitled "Bai Win Cash Flow Projection." The document included a payment schedule to induce Bai-Win to release goods ordered by Quickutz and manufactured on Quickutz's behalf. The document was accompanied by an email from Erik D. Adams, the president of Quickutz, that stated, "the schedule attached is possible and we will commit to that." Upon taking possession of the final container for which the payment schedule was supposed to cover, Quickutz failed to make the payments set forth in the payment schedule.

43. As of June 30, 2009, , Quickutz owes Bai-Win $706,907.51, all of which is more than ninety days past due.

44. Bai-Win withheld the last container of goods actually shipped to Quickutz from being released to Quickutz until Quickutz agreed to send additional payments towards its large outstanding balance. Subsequently, Quickutz expressly agreed to pay to Bai-Win the sum of $32,000 in order for Bai-Win to release the container.

45. Accordingly, in May 2009, Bai-Win authorized release of the container. On May 20, 2009, Quickutz wired $5,000 to Bai-Win, which was $27,000 less than the amount that Quickutz had expressly agreed to pay, in order to induce Bai-Win to release the final container of goods.

46. At the time that Quickutz agreed to make payments pursuant to any of its proposed payment schedules, it knew or should have known that it would not meet such payment terms. Accordingly, Quickutz made material false statements to Bai-Win to fraudulently induced Bai-Win to continue to have goods manufactured for Quickutz's and to release goods to Quickutz without any bona fide intent to make the agreed upon payments.

47. Bai-Win detrimentally relied on such material false statements to continue to have goods manufactured for Quickutz and to ship such goods to Quickutz.

48. Pursuant to other Quickutz purchase orders, the factories still have finished product, packaging supplies and raw materials that is awaiting shipment and/or completed manufacturing.

49. The factories have refused shipment of finished goods and manufacturing of new goods until the factories are paid in full.

50. Bai-Win is ultimately responsible to the factories for such payments.

51. On information and belief, Quickutz is having goods manufactured by factories in China that are not represented by Bai-Win and has taken delivery of such goods.

52. On information and belief, Quickutz has sold such goods to its customers and received payment for the sale of such goods.

53. On information and belief, Quickutz has sufficient funds to pay Bai-Win the amount due and owing.

54. Quickutz has made express representations that it is presently unable to pay Bai-Win the full amount due and owing.

55. Quickutz has threatened Bai-Win with bankruptcy and non-payment if Bai-Win seeks to collect on the amounts due and owing to Bai-Win by Quickutz.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

56. Plaintiff incorporates the allegations of each and every previous paragraph of this Complaint as if fully set forth herein.

57. Defendant submitted purchase orders to Bai-Win for the manufacture of goods in China. Bai-Win fulfilled the orders and shipped the goods to Defendant. Defendant accepted the orders.

58. Defendant failed to make timely payments for the amounts it owes to Bai-Win pursuant to goods ordered and delivered to Quickutz subject to the various purchase orders it submitted to Bai-Win.

59. Defendant owes to Bai-Win the sum of at least $706,907.51 plus interest for goods received and accepted by Defendant.

60. Defendant has caused consequential damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
(Fraud in the Inducement)

61. Plaintiff incorporates the allegations of each and every previous paragraph of this Complaint as if fully set forth herein.

62. On several occasions, Defendant made false statements of material fact that Defendant knew or should have known were false.

63. The false statements were made to induce Bai-Win to enter into various contracts pursuant to Defendant's purchase orders to continue to have manufactured and to ship goods to Defendant.

64. Such false statements caused regarding future payments to Bai-Win in order to entice Bai-Win to continue to seek the manufacture of goods from its factories and to deliver the goods to Defendant.

65. Such false statements have caused the tarnishment of Bai-Win's reputation as a reliable agent with its factories.

66. Such false statements have caused financial strain on Bai-Win's business.

67. Defendant knowingly made material false representations regarding such future payments, specifically knowing that it had no bona fide intention to make the agreed upon payments.

68. Such false representations fraudulently induced Bai-Win to continue to ship goods to Defendant.

69. Such false representations fraudulently induced Bai-Win to continue to have its factories manufacture goods on Defendant's behalf.

70. Accordingly, Bai-Win has been damaged by an amount to be determined at trial. In addition, this case is exceptional and Bai-Win is entitled to recover its reasonable attorneys' fees, expenses, and costs incurred in this action.

### THIRD CLAIM FOR RELIEF
(Detrimental Reliance)

71. Plaintiff incorporates the allegations of each and every previous paragraph of this Complaint as if fully set forth herein.

72. On several occasions, Defendant made material false statements regarding future payments to Bai-Win in order to induce Bai-Win to continue to have goods manufactured for Defendant and to deliver goods to Defendant.

73. Defendant knowingly made material false statements regarding such future payments, specifically knowing that it had no bona fide intention to make the agreed upon payments.

74. Bai-Win relied on such statements in order to instruct its factories to continue to manufacture goods at Defendant's request and to incur additional debt on Defendant's behalf.

75. Subsequently, Bai Win has been unable to pay its factories.

76. Such inability to pay its factories has jeopardized Bai-Win's relationships with its factories, tarnished its reputation as a reliable company and detrimentally affected its ability to get goods manufactured through these factories for its other clients

## **FOURTH CLAIM FOR RELIEF**
(Unjust Enrichment)

77. Plaintiff incorporates the allegations of each and every previous paragraph of this Complaint as if fully set forth herein.

78. Defendant submitted purchase orders to Bai-Win for the manufacture of goods in China. Bai-Win fulfilled the orders and shipped the goods to Defendant. Defendant accepted the orders.

79. Defendant failed to make timely payments for the amounts it owes to Bai-Win pursuant to goods ordered subject to the various purchase orders it submitted to Bai-Win.

80. Defendant owes to Bai-Win the sum of at least $706,907.51 plus interest for goods received and accepted by Defendant.

81. Defendant has been unjustly enriched by receiving goods and selling such goods to its customers without paying for such goods.

82. Bai-Win is therefore entitled to recover any goods in Defendant's possession that were delivered to Defendant by Bai-Win.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that this Court enter judgment and relief against Defendant as follows:

1. That the Court adjudges that Defendant breached the contracts for goods between Plaintiff and Defendant for failing to timely pay for goods delivered to Defendant.

2. For a judgment that Bai-Win is owed the sum of at least $706,907.51 plus interest for goods delivered to Defendant.

3. For a judgment that Defendant's failure to make timely payments has resulting in consequential damages in an amount to be determined at trial.

4. For a judgment that Defendant made material false representations to Plaintiff.

5. For a judgment that Defendant's false statements were material and that such material false statements fraudulently induced Bai-Win to continue to have manufactured and/or shipped goods on Defendant's behalf.

6. For a judgment that Plaintiff detrimentally relied on such material false representations.

7. For a judgment that Defendant has been unjustly enriched.

8. For a judgment to return all goods in Defendant's possession delivered by Bai-Win.

9. For an award of compensatory and consequential damages in an amount to be determined at trial, together with pre- and post-judgment interest thereon;

10. For an award of punitive damages in an amount of $5,000,000;

11. For an order declaring that this case is exceptional and awarding Plaintiff its

reasonable attorneys' fees, expenses, and costs incurred in this action; and

    12.    For an award of such other and further relief as this Court deems just and proper.

DATED this __15__ day of _July_____, 2009.

                                                                              _/Frank W. Compagni/_____
                                                                              Frank W. Compagni (A 7174)
                                                                              Bretton L. Crockett (A 8573)
                                                                              MORRISS O'BRYANT COMPAGNI, P.C.
                                                                              Attorneys for Plaintiff

Plaintiffs' Addresses:

Bai- Win Mercantile Corp. LTD.
Room 1202, Golden Star Building
20 Lockhart Road
Hong Kong